IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DUSTIN TROSPER,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**ERIC ADAMSON,**<br>**C/O MCCORMICK,**<br>**C/O WILKERSON,**<br>**JOHN DOE 1,**<br>**JOHN DOE 2,**<br>**JOHN DOE 3,**<br>**JANE DOE 1,**<br>**ASHLEY MCCASLIN,**<br>**EARL DIXON, and**<br>**RUSSELL GOINS,**<br><br>    **Defendants.** | Case No. 20-cv-00552-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Dustin Trosper brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while incarcerated at Lawrence Correctional Center ("Lawrence"). Trosper claims he was denied adequate shelter by Defendants who housed him in a cell with a broken window, exposing him to extreme temperatures and precipitation for several months. He requests monetary damages.

  The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this

juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Trosper alleges the following: In mid-January 2018, the fire alarms turned on at Lawrence "caused a forceful suction that broke the turning knob of the window" in his cell. (Doc. 1, p. 8). After the knob broke, the window would blow wide open, and Trosper had no way of shielding himself from the elements, including precipitation and sub-freezing temperatures. At times, the window would also blow completely shut, causing a lack of air circulation and ventilation. (*Id.*). When the window would blow shut, he had no "reprieve from the severe heat that the heating radiators would output." (*Id.*). The window would at times blow open or shut in the middle of the night, causing Trosper to wake up overheated or freezing. (*Id.*).

For the next few months, Trosper solicited help fixing his window or moving to a new cell from various staff members at Lawrence. Immediately after the window broke, Trosper notified Correctional Officer Eric Adamson that the window was broken in his cell and asked Adamson to contact the placement office and move him to a different cell with a functioning window. (Doc. 1, p. 9). Trosper pointed out to Adamson available cells in the wing that had no occupants. Adamson told Trosper that he would not call the placement office but that a work order had to be submitted to have the window fixed. Trosper also contacted Correctional Officer McCormick with the same request and received the same answer. Trosper and his cellmate continued to follow up with both Adamson and McCormick about the window. They also repeated their requests to move to an open cell, preferably one in their current housing wing. They were told to stop asking because the work order would take some time to complete. (*Id.*).

In mid-February, Trosper was told by John Doe 1 that a work order was not submitted until February 9, 2018. (Doc. 1, p. 9). Around this same time, Trosper also spoke to a mental health

professional, Jane Doe 1, about his cell conditions during a one-on-one session in the housing unit corridor. He told her that extreme temperatures and the precipitation in his cell were exacerbating his mental illness. Jane Doe 1 instructed him to submit a work order. Trosper told her that he had and asked if she could assist in having him and his cellmate moved. She declined saying "the work order is the way to go and that maybe [Trosper should] just submit another request slip for a work order." (*Id.*).

In March, Trosper asked maintenance staff about the status of the work order for his window and how much longer it would be before the window was fixed. (Doc. 1, p. 9). The maintenance staff told Trosper that he would have to wait because the part for the window had not been in for months and many windows at Lawrence were similarly broken. (*Id.*).

Trosper also spoke to Counselor McCaslin in March while she was making a cell visit. (*Id.* at p. 9). Trosper informed her about his cell conditions, the lack of response to the work orders, and again requested to move to a new cell. McCaslin told Trosper that he was unlikely to be moved and that all she could do was put in a work order, but because a work order had already been submitted, she would not submit another one, as it would be fruitless. (*Id.*).

Trosper spoke with Lieutenant Dixon about his broken window at some point during chow line. (Doc. 1, p. 9). Dixon said he would inspect the cell, and Trosper was informed by another officer that evening that Dixon had put in a work order for the broken window. The next day, Trosper informed Dixon that previous work orders had already been submitted, and that he had been asking Correctional Officer Adamson to assist him in moving to an available cell. Dixon suggested that Trosper write to the placement office. Trosper wrote the placement office, but he did not receive a response. (*Id.*).

In April, the fire alarms turned on again and "kicked on the blowers." (Doc. 1, p. 9). Trosper's window blew wide open. (Doc. 1, p. 9). The temperature outside was 30 degrees and

"the suction due to all of the other units closing their windows caused a torrent of roughly 60 mph winds to rush through his cell." (*Id.* at p. 9-10). Trosper and his cellmate pressed the panic button over 300 times for nearly an hour, kicked the cell door repeatedly, and yelled out, but did not receive a response from correctional officers. Trosper and his cellmate dressed in many layers, hats, gloves, and blankets to avoid the cold. Finally, another inmate returning from a call pass saw the wind blowing in Trosper's cell and informed correctional officers in the "bubble" of the situation. Correctional Officer Wilkerson approached the cell and asked, "What the fuck's so damn important?" Trosper explained there was an icy wind coming through his cell. He and his cellmate were allowed to stay out on the deck until the fire alarm was turned off by staff. Correctional Officer Adamson was 2B's wing officer that day and in the "bubble," but Adamson did not come out a respond to the panic button.

In mid-April, Trosper spoke to Lieutenant John Doe 2, who was already informed of the situation. (Doc. 1, p. 10). He told Trosper to put in a work order and that he would write to the placement office. Nothing came of either request.

On April 23, 2018, it rained onto the beds in the cell and on Trosper's box containing his clothes and valuables. (Doc. 1, p. 10). Trosper notified John Doe 3, the wing officer at the time. John Doe 3 suggested that Trosper cover the window with a garbage bag. This suggestion would not solve Trosper's problem, is against the facility's policy, and could have resulted in disciplinary action.

On April 24, 2018, when Trosper was returning to the wing from a call pass with other inmates, Correctional Officer Adamson let the other inmates in the lower cells by "keying them in," but made Trosper wait before letting him into the upstairs cells. (Doc. 1, p. 10). Trosper "direly needed to use the bathroom, so he pounded on the wing door for 15 minutes." Adamson returned to let him in and scolded Trosper, "saying it was 'one of his pet peeves.'" (*Id.*). The next day, when

another inmate, Elliott, was returning from a call pass, Elliot asked correctional officers, including Adamson and Wilkerson, to "roll" his and Trosper's cell doors so that they could each retrieve their shower supplies. The correctional officers said yes and rolled Elliot's cell door but not Trosper's cell door. Trosper then asked another inmate, Bill, to ask the correctional officers if they would roll his cell door. The officers said yes and rolled Bill's cell but again, not Trosper's cell door. When Trosper went to the "bubble" and ask the officers through the intercom why the "other cells were rolled and not his?" Someone answered, "What are they, your bitch?" Trosper heard the other correctional officers laughing. (*Id.* at p. 10). Trosper responded that "he's now the one asking," but his request was still denied.

On May 3, 2018, Trosper spoke with maintenance staff who told Trosper that the facility had the parts to fix windows all along and that the windows were being fixed regularly. (Doc. 1, p. 10). The next day, Trosper's cellmate spoke with Lieutenant Givens at chow line and told him about the entire situation. (*Id.* at p. 11). On May 6, 2018, Lieutenant Givens told Trosper's cellmate, "We're working on it." At some point, Trosper spoke with Bennet, a maintenance worker, who told Trosper that he had never seen nor heard about any work order regarding the window in Trosper's cell and had he'd known, the window would have been fixed within a week. On May 6, 2018, Trosper filed a grievance, and the next day maintenance arrived to fix the window. (*Id.*).

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following two counts:

> **Count 1:** Eighth Amendment claim against Adamson, McCormick, Wilkerson, John Doe 1, John Doe 2, John Doe 3, Jane Doe 1, McCaslin, Dixon, and Goins for subjecting Trosper to unconstitutional conditions of confinement.

> **Count 2:** First Amendment claim against Adamson for retaliating against Trosper for complaining about his cell conditions.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

### Count 1

"The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy,* 826 F. 3d 1000, 1005 (7th Cir. 2016). The Seventh Circuit has "identified several situations that meet this demanding test, including lack of heat, clothing, or sanitation." *Id.* Furthermore, the Seventh Court has explained that "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem." *Id.*

Here, Trosper's window was broken for over three months, and he was exposed to extreme hot and cold temperatures, poor ventilation, wind, and precipitation. *See Haywood v. Hathaway,* 842 F. 3d 1026, 1030 (7th Cir. 2016); *Dixon v. Godinez,* 114 F. 3d 640, 642-43 (7th Cir. 1997). He notified Adamson, McCormick, Jane Doe 1, McCaslin, Dixon, Wilkerson, John Doe 2, and John Doe 3 of the issues with his window, and Defendants did not act to move Trosper to a different cell or ensure that his window was repaired. *See Dixon,* 114 F. at 645 ("request for relief which

have fallen on deaf ears may evidence deliberate indifference"). Thus, Count 1 will proceed against Adamson, McCormick, Jane Doe 1, McCaslin, Dixon, Wilkerson, John Doe 2, and John Doe 3.

Count 1 will be dismissed as to John Doe 1. Trosper claims that in February he followed up on the status of the work order and was told by John Doe 1 that a work order was not submitted until February 9, 2018. (Doc. 1, p. 9). Other than this single interaction, where John Doe 1 investigated the status of the work order at Trosper's request and confirmed a work order was submitted, there are no allegations for the Court to infer that John Doe 1 knew of impending harm to Trosper caused by the window and disregarded his cell conditions.

Count 1 will also be dismissed as to Warden Russell Goins. Trosper alleges that Goins "is the Warden of Lawrence and is responsible for reviewing all administrative decisions and the safety of inmates." (Doc. 1, p. 8). He claims that Goins failed to provide adequate shelter to inmates by allowing broken windows to persist throughout the facility and a defective work order system that fails to remedy maintenance situations. Goins also has failed to provide employees proper training on when and how to make the decision to move inmates to different cells. (*Id.* at p. 12).

These allegations are not sufficient to state a constitutional claim. The mere fact that Warden Goins is in a supervisory role does not establish liability. The doctrine of *respondeat superior*, also known as supervisor liability, does not apply to actions filed pursuant to Section 1983. To be held liable a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (internal quotations and citations omitted). Trosper has not asserted any personal involvement or knowledge on the part of Goins regarding his cell conditions. Thus, the claims against Goins are dismissed without prejudice.

### Count 2

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. See, e.g., *Walker v. Thompson*, 288 F.3d 1005 (7th Cir.2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); Babcock, 102 F.3d 267; *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Trosper alleges that Adamson made him wait fifteen minutes before "keying" him into the cells on April 24, 2018. Then, the next day, a group of correctional officers, including Adamson, would not "roll" his cell door so that he could access his shower supplies. He goes on to state that Adamson did not let him into his cell for restroom and shower use on multiple occasions. (Doc. 1, p. 12). Trosper claims he "felt targeted and retaliated against for repeatedly seeking relief from the elements." (Doc. 1, p. 10). These allegations are sufficient to state retaliation claim, and Count 2 will proceed against Adamson.

### MOTION FOR RECRUITMENT OF COUNSEL

Trosper has filed a Motion for Recruitment of Counsel (Doc. 7), which is **DENIED**.[1] He has not provided sufficient information for the Court to determine if he has made a reasonable effort to obtain counsel. Trosper states that he contacted a dozen attorneys and organizations, which have all declined representation. However, he does not provide any supporting documentation or details regarding the attorneys and organizations he has contacted, such as copies of declination letters, names, phone numbers, or addresses. Because he has not made this threshold

---

[1] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

showing, the Motion is denied. Should Trosper choose to move for recruitment of counsel at a later date, the Court directs him to include in the motion the names and addresses of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Trosper shall be allowed to proceed with Count 1 against John Doe 2, John Doe 3, and Jane Doe 1. However, he must identify these unknown defendants with particularity before service of the Complaint can be made on them. Trosper will have the opportunity to engage in limited discovery to ascertain the identity of these individuals. *Rodriguez*, 577 F.3d at 832. The current Warden of Lawrence, Dr. Deanna Brookhart, is responsible for responding to discovery aimed at identifying these unknown defendants and will be added as a defendant in her official capacity only. Guidelines and dates will be set for identifying the John Does once Defendants have filed their Answers to the Complaint. After the names of the John Does are discovered, Trosper shall file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Adamson, McCormick, Wilkerson, John Doe 2, John Doe 3, Jane Doe 1, McCaslin, and Dixon and is **DISMISSED** as to John Doe 1 and Goins. **COUNT 2** will proceed against Adamson. Because there are no surviving claims proceeding against John Doe 1 and Goins, they are **DISMISSED** without prejudice, and the Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.

The Clerk of Court is **DIRECTED** to **ADD** the Warden of Lawrence Correctional Center, Dr. Deanna Brookhart, as a defendant, in her official capacity only, for the purpose of responding

to any discovery aimed at identifying the John Doe Defendants.

The Motion for Recruitment of Counsel (Doc. 7) is **DENIED without prejudice.**

The Clerk of Court shall prepare for Adamson, McCormick, Wilkerson, McCaslin, Dixon, Brookhart (official capacity only), and John Doe 2, John Doe 3, and Jane Doe 1 (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Trosper. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Trosper, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the John Does until Trosper has identified them by name in a properly filed motion for substitution. Trosper is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals. Further instructions on identifying the John Does will be provided in a separate order.

With the exception of Brookhart, Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order. <u>Because Brookhart is only in the</u>**

**case for purposes of identifying the John Does, she does not need to file an Answer.**

Finally, Trosper is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   September 23, 2021**

                                                              *s/Stephen P. McGlynn*
                                                              **STEPHEN P. MCGLYNN**
                                                              **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.